**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NEW YORK**

---

GSC TECHNOLOGY CORPORATION,
160 Vanier
St-Jean Sur Richelieu
Quebec, Canada J3B 3R4,

            **Plaintiff,**

  v.

UMBRA, LLC
1705 Broadway Street
Buffalo, New York 14212

**and**

UMBRA, Inc.
1705 Broadway Street
Buffalo, New York 14212,

           **Defendants.**

**COMPLAINT**
**(JURY TRIAL DEMANDED)**

Civil Action No.

---

Plaintiff, GSC Technology Corporation, by and through its undersigned counsel, Schröder, Joseph & Associates, LLP, and Cook, Alex, McFarron, Manzo, Cummings & Mehler, Ltd., for its Complaint against Defendants Umbra, LLC and Umbra, Inc. states as follows:

## THE PARTIES

1.  Plaintiff, GSC Technology Corporation ("GSC"), is a Canadian corporation having its principal place of business at 160 Vanier, St-Jean Sur Richelieu, Quebec, Canada J3B 3R4.

2.  Defendant, Umbra, LLC ("Umbra, LLC"), is a New York limited liability company having its principal place of business at 1705 Broadway Street, Buffalo, New

York 14212.  Defendant, Umbra, Inc. ("Umbra, Inc."), is a corporation that is incorporated under the laws of the State of New York, is currently active and has its principal place of business at 1705 Broadway Street, Buffalo, New York 14212.

## NATURE OF THIS ACTION AND RELATED ACTION

3.       This action seeks a declaratory judgment of non-infringement by GSC of a design patent issued to Umbra, Inc. but now held by Umbra, LLC, non-infringement by GSC of Umbra, Inc.'s and Umbra, LLC's registered and unregistered trademarks, non-dilution of Umbra, Inc. and Umbra, LLC's registered and unregistered trademarks, and non-infringement of Umbra, Inc. and Umbra, LLC's alleged trade dress.  This action also asserts state law claims for unfair competition and intentional interference with prospective business relationships and seeks an award of money damages and punitive damages against Defendants.

4.       This action arises out of Umbra, LLC and Umbra, Inc.'s wrongful conduct in wantonly and maliciously disparaging GSC and its goods and by threatening litigation against Home Depot Canada, and subsequently commencing litigation against Home Depot, Inc. for the improper purpose of threatening and harassing vendors who offered a stacking chair which competes with Umbra, Inc.'s and Umbra, LLC's stacking chair, for sale to consumers.  The action against Home Depot, Inc. was originally filed by Umbra, Inc. as Plaintiff but an Amended Complaint was filed with Umbra, LLC as Plaintiff. The action is presently captioned *Umbra, L.L.C. v. Home Depot, Inc.,* Civil Action No. 06-CV- 0612 S (Sc) (hereinafter "Home Depot, Inc. Action") and is currently pending before this Court.

## JURISDICTION AND VENUE

5.    This Court has jurisdiction pursuant to 28 U.S.C. §2201 involving claims under the patent and trademark statutes of the United States.

6.    This Court has supplemental jurisdiction over all related claims herein in accordance with 28 U.S.C. § 1367.

7.    This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 (a) (2) in that GSC is a citizen and/or subject of a foreign state, Canada, and Umbra, LLC and Umbra, Inc. are citizens of the State of New York and the amount in controversy, exclusive of interest and costs, exceeds $75,000.

8.    Defendants Umbra, LLC and Umbra, Inc. are subject to the exercise of personal jurisdiction by this Court because Defendants are residents of the State of New York, have their principal place of business in New York, and regularly transact business within the State.

9.    Venue is proper in this District under 28 U.S.C. § 1391 (b)(1) in that Umbra, LLC and Umbra, Inc. have their principal place of business within this District and under 28 U.S.C. § 1391 (b)(2) in that a substantial part of the events or omissions giving rise to the claim occurred in this District.

## FACTS COMMON TO ALL CLAIMS

10.    GSC is in the business of manufacturing folding tables and chairs and injection-molded house wares and other items.

11.    On December 29, 1998, a patent application in the name of Karim Rashid was filed with the U.S. Patent and Trademark Office for a design entitled "Chair." The U.S. Patent and Trademark Office later issued U.S. Design Patent Des. 417,795 ("the '795

Rashid Patent") to Umbra, Inc. (of Buffalo, New York) as the assignee of Mr. Rashid. Upon information and belief, Umbra, Inc. later assigned the '795 Rashid Patent to Umbra, LLC.

12.     Upon information and belief, Umbra, Inc. marketed a stackable chair under the trademark "OH" for a stackable molded plastic chair with tubular steel legs.  Upon information and belief, Umbra, LLC now markets that OH chair. Upon information and belief, both Umbra, Inc. and Umbra, LLC claim that the OH chair embodies the design of the '795 Rashid Patent.

13.     Photographs of the 2006 version of the OH chair along with tags found on the OH chair are attached hereto as Exhibit A.

14.     Umbra, LLC and Umbra, Inc. claim that in 2001 Umbra, LLC or Umbra, Inc. marketed a stackable molded plastic chair with tubular steel legs (the "2001 Umbra AH Chair") under the trademark "AH." Upon information and belief, the 2001 Umbra AH Chair had a different design and appearance from the chair design set forth in the '795 Rashid Patent.

15.     Upon information and belief, neither Umbra, LLC nor Umbra, Inc. sought to register the trademark AH with the U.S. Patent and Trademark Office.

16.     On August 29, 2001, Umbra, Inc. filed an application to register the OH trademark with the U.S. Patent and Trademark Office. On April 9, 2002, the U.S. Patent and Trademark Office issued U.S. Trademark Registration 2,558,858 to Umbra, Inc. for the OH mark for furniture.

17.     On or about December 20, 2005, Umbra, Inc. and/or Umbra, LLC submitted for recording with the U.S. Patent and Trademark Office an assignment of U.S. Trademark Registration 2,558,858 (for the OH mark) to Umbra, LLC.

18.     On or about December 20, 2005, Robert Farber, GSC's principal, filed a design patent application claiming the ornamental design embodied in a stacking chair which is currently sold under the trademark "AHHA." On July 25, 2006, the United States Patent and Trademark Office issued a design patent, United States Design Patent No. Des. 525,446 ("the GSC Patent") for the design embodied in the AHHA chair. A copy of the GSC Patent is attached hereto as Exhibit B.

19.     Plaintiff GSC is the assignee of the GSC Patent.

20.     During the prosecution of the GSC Patent, Mr. Farber disclosed the '795 Rashid Patent as prior art for consideration by the Patent Examiner. See Exhibit B, References Cited. The Patent Examiner approved the GSC Patent after considering the prior art, including the '795 Rashid Patent, and the U.S. Patent and Trademark Office duly issued the GSC Patent to Mr. Farber's assignee, GSC, Plaintiff herein.

21.     Upon information and belief, Umbra, LLC at all times relevant hereto had notice of the GSC Patent.

22.     As early as May, 2005, Umbra, LLC and Umbra, Inc. were aware that GSC was selling and marketing its stacking chair under the trademark "AHHA." See Exhibit 6, to the Amended Complaint attached hereto as Exhibit C.

23.     Upon information and belief, at all times relevant hereto, the 2001 Umbra AH Chair was not offered for sale in the United States by either Umbra, LLC or Umbra, Inc.

24.     Upon information and belief, Umbra, LLC and/or Umbra, Inc. abandoned the unregistered AH trademark when Umbra, Inc. applied to register the OH trademark in 2001.

25.     Upon information and belief, Umbra, Inc. and/or Umbra, LLC were aware when Umbra, Inc. registered the OH trademark that many variations of the same combination of letters are eligible for trademark registration and that the font, coloring, height and other characteristics sufficiently distinguish trademarks containing the same letters or combination of letters such that there is no confusion regarding the source of the goods. Several examples of variations of the OH and AH trademarks registered by the U.S. Patent and Trademark Office are attached hereto as Exhibit D.

26.     Neither Umbra, LLC nor Umbra, Inc. currently markets or sells the 2001 Umbra AH Chair or any chair or furniture using the unregistered AH trademark and has not done so, upon information and belief, since 2001.  A copy of Umbra, LLC's website listing the furniture it offers for sale is attached hereto as Exhibit E.

27.     GSC's AHHA chair retails for approximately $20.00.  In contrast, the OH chair retails for approximately $49.00 to $66.00. See Exhibits A and E.

28.     In the spring of 2006, GSC successfully negotiated with Home Depot USA to carry GSC's AHHA chair in retail stores in the United States.

29.     During this same period, GSC was in negotiations with several other retailers in the United States who indicated that they were willing to offer the AHHA chair for sale in the United States.

30.     In response to GSC's successful efforts in offering the AHHA chair through Home Depot USA, and the interest by other retailers in carrying the AHHA chair, Umbra, LLC

threatened and intimidated both Home Depot Canada and, upon information and belief, other customers and potential customers, including Home Depot USA, with costly legal action if they did business with GSC.

31.     Specifically, in May of 2006, Umbra, LLC wrote to Home Depot Canada, accusing the AHHA chair of copying the OH chair, and tacitly accusing GSC of being unethical and immoral, and threatening patent and/or trademark litigation.  A copy of the letter sent to Home Depot Canada in May of 2006 is attached hereto as Exhibit F.

32.     Although the May, 2006 letter was sent on the letterhead of Umbra Ltd., Defendant Umbra, LLC has acknowledged that Umbra Ltd. either is an alter ego of Umbra, LLC or was acting as an agent of Umbra, LLC inasmuch as Umbra, LLC has referred to the May, 2006 letter as its own "cease and desist" letter in the related Home Depot, Inc. Action.

33.     Upon information and belief, the May, 2006 letter to Home Depot Canada was subsequently forwarded to Home Depot USA and The Home Depot, Inc.

34.     When Umbra, LLC transmitted its letter to Home Depot Canada, Umbra, LLC knew its claims with regard to infringement of the AH trademark were false in that Umbra, LLC knew that it or Umbra, Inc. had abandoned the AH trademark in 2001.

35.     Indeed, Umbra, LLC falsely claimed to Home Depot Canada in its May, 2006 letter that it continued to market and sell a chair using the common law AH mark when, as evidenced by Umbra, LLC's product catalog, it does not offer any products under the AH name and has not done so, upon information and belief, since 2001.  Specifically, Umbra, LLC expressly and falsely stated in its May, 2006 letter that "we have an AH Chair" when in fact no such chair appears on Umbra, LLC's website and the only

advertisement with respect to such a chair (which is attached to the Amended Complaint against Home Depot, Inc.) was dated 2001. Compare Exhibit E to Exhibit 2 to the Amended Complaint (Exhibit C hereto).

36.     When Umbra, LLC transmitted its letter to Home Depot Canada, Umbra, LLC knew that its claim that GSC's use of the trademark AHHA "causes confusion" and "diminishes" both Home Depot Canada's and Umbra, LLC's brand was false and misleading in that Umbra, LLC was on notice at the time it wrote to Home Depot Canada that numerous trademarks had been issued by the U.S. Patent and Trademark Office using the letters AH and OH, that Umbra, LLC had abandoned its use of the unregistered AH trademark, and that the use of different letters, type face and other distinctive characteristics distinguished the GSC's trademark AHHA with respect to the AHHA chair from Umbra, LLC's OH trademark and its alleged AH trademark.

37.     Likewise, Umbra, LLC knew that the statements contained in its May, 2006 letter to Home Depot Canada regarding the alleged copying and "design similarity" of the AHHA chair to Umbra, LLC's chair were misleading in that Umbra, LLC knew that GSC was not infringing the '795 Rashid Patent, just as Umbra, LLC knew that GSC was not infringing any of Umbra, LLC's trademarks.

38.     Upon information and belief, Umbra, LLC made similar communications, both in writing and orally, with other retailers with whom GSC was negotiating to carry the AHHA chair.

39.     Upon information and belief, the communications described in paragraphs 30 to 38 above were made in bad faith and for the purpose of threatening and intimidating GSC's customers and potential customers with costly patent and trademark litigation to

induce Home Depot Canada, Home Depot USA and Home Depot, Inc., and other potential customers to decline to sell GSC's AHHA chair.

40.    Upon information and belief, the commencement of the action against Home Depot, Inc. by Umbra, Inc. and later by Umbra, LLC was done for an improper purpose in that both Umbra, Inc. and Umbra, LLC had actual knowledge that the U.S. Patent and Trademark Office had made a determination that the designs in the GSC Patent and the '795 Rashid Patent were patentably distinct, that Umbra, LLC and Umbra, Inc. had abandoned any rights in the common law AH trademark, and that GSC's use of the trademark AHHA was not confusingly similar to either the abandoned AH trademark and/or Umbra, LLC's registered OH trademark.

41.    Although Home Depot Canada did not directly respond to Umbra, LLC's May, 2006 letter, upon information and belief, Home Depot USA in response to Umbra, LLC's threats to Home Depot Canada, moved the AHHA chair to a less prominent position in its stores and lost interest in promoting the AHHA chair.

42.    Upon information and belief, when Home Depot USA did not cease selling its remaining inventory of the AHHA chair, Umbra, Inc. commenced the Home Depot, Inc. Action in October 2006 against Home Depot, Inc., for trademark, trade dress, and patent infringement, trademark dilution, and other related causes.  Subsequently, Umbra, LLC filed an Amended Complaint in the Home Depot, Inc. Action naming Umbra, LLC Plaintiff. See Exhibit C.

43.    Upon information and belief, Umbra, Inc. and Umbra, LLC commenced the Home Depot, Inc. Action for the improper purpose of intimidating Home Depot Canada,

Home Depot USA and Home Depot, Inc., and other potential customers from doing business with GSC.

44.     Umbra, Inc. and Umbra, LLC failed to disclose to either Home Depot, Inc. or the Court in the Amended Complaint in the Home Depot, Inc. Action that GSC's AHHA chair was manufactured pursuant to the GSC Patent and that the U.S. Patent and Trademark Office had made a determination that the designs in the GSC Patent and the '795 Rashid Patent were patentably distinct.

45.     Umbra, Inc. and Umbra, LLC further misleadingly implied in both the Complaint and the Amended Complaint in the Home Depot, Inc. Action, that they continued to use the common law AH trademark in connection with the sale of stacking chairs when, upon information and belief, they had abandoned all use of the AH mark in or about 2001. A copy of the Complaint filed in the Home Depot, Inc. Actions is attached hereto as Exhibit G.

46.     Upon information and belief, because of the commencement of the Home Depot, Inc. Action, Home Depot USA elected not to place additional orders for the AHHA chair and ceased doing business with GSC.

47.     Upon information and belief, other prospective customers, who initially had expressed an interest in carrying the AHHA chair, have declined to place any orders based on the fear of becoming involved in costly and lengthy patent and trademark litigation.

48.     Despite threatening and commencing an action against Home Depot, Inc., Umbra, LLC has at no time taken any action to directly enforce its alleged patent and trademark rights against GSC.

49. Upon information and belief, Umbra, Inc. and Umbra, LLC's conduct in commencing litigation against Home Depot, Inc., rather than the manufacturer of the AHHA chair, alleging infringement of the '795 Rashid Patent, the OH and alleged AH trademarks, and the alleged OH chair trade dress, and making misrepresentations to customers and potential customers is part of a pattern and practice in which Umbra, Inc. and Umbra, LLC have repeatedly engaged for the purpose of improperly intimidating customers and potential customers of its competitors and causing them to cease or refrain from doing business with Umbra, Inc. and Umbra, LLC's competitors.

## AS AND FOR A FIRST CAUSE OF ACTION

### DECLARATION OF NON-INFRINGEMENT OF THE '795 RASHID PATENT

50. GSC repeats and realleges each of the allegations set forth in paragraphs 1 to 49 above as if set forth fully herein.

51. Umbra, Inc. and Umbra, LLC have contended in the Home Depot, Inc. Action that GSC's AHHA chair, manufactured in accordance with the design set forth in the GSC Patent, infringes the '795 Rashid Patent. Home Depot, Inc. Complaint and Amended Complaint at ¶¶ 91-99.

52. The prior art disclosed during the prosecution of the GSC Patent included the '795 Rashid Patent.

53. Before issuing the GSC Patent, the U.S. Patent and Trademark Office had made a determination that the designs in the GSC Patent and the '795 Rashid Patent were patentably distinct.

54.     An actual, present and justiciable controversy has arisen between GSC and

Umbra, Inc. and Umbra, LLC concerning whether or not the sale or offer for sale, and

other actions, in the United States of GSC's ᴀHHᴀ chair infringes the '795 Rashid Patent.

55.     GSC seeks a declaratory judgment from this Court that any manufacture, sale,

offer for sale, and distribution of the ᴀHHᴀ chair in the United States, and any

importation thereof into the United States, does not infringe the '795 Rashid Patent.

## AS AND FOR A SECOND CAUSE OF ACTION

## DECLARATION OF NON-INFRINGEMENT OF UMBRA'S OH TRADEMARK

56.     GSC repeats and realleges each of the allegations set forth in paragraphs 1 to 55

above as if set forth fully herein.

57.     Umbra, Inc. and Umbra, LLC have contended in the Home Depot, Inc. Action

that GSC's use of the trademark ᴀHHᴀ infringes Umbra, LLC's registered trademark OH

and is confusingly similar to such registered trademark.  Home Depot, Inc. Complaint

and Amended Complaint at ¶¶ 32-41; 69-78.

58.     An actual, present and justiciable controversy has arisen between GSC and

Umbra, Inc. and Umbra, LLC concerning whether or not GSC's use of the trademark

"ᴀHHᴀ" for its chair infringes U.S. Trademark Registration 2,558,858 for the "OH"

trademark.

59.     GSC seeks a declaratory judgment from this Court that the use of the trademark

"ᴀHHᴀ" on or in connection with chairs made and sold by GSC does not infringe U.S.

Trademark Registration 2,558,858 and is not confusingly similar or likely to create

confusion among consumers.

## AS AND FOR A THIRD CAUSE OF ACTION

### DECLARATION OF NON-INFRINGEMENT OF UMBRA'S ALLEGED AH TRADEMARK

60.     GSC repeats and realleges each of the allegations set forth in paragraphs 1 to 59 above as if set forth fully herein.

61.     Umbra, Inc. and Umbra, LLC have contended in the Home Depot, Inc. Action that GSC's use of the trademark AHHA infringes Umbra, Inc. and/or Umbra, LLC's alleged unregistered AH trademark and is confusingly similar to the alleged AH trademark.  Home Depot, Inc. Complaint and Amended Complaint at ¶¶ 69-78.

62.     An actual, present and justiciable controversy has arisen between GSC and Umbra, Inc. and Umbra, LLC concerning whether or not the use of the trademark AHHA infringes any rights of Umbra, LLC to the alleged unregistered AH trademark.

63.     GSC seeks a declaratory judgment from this Court that Umbra, Inc. and Umbra, LLC abandoned any rights either of them may have had to the alleged AH trademark and that the trademark AHHA is not confusingly similar to the alleged AH trademark or likely to create confusion among consumers.

64.     GSC further seeks a declaratory judgment that the use by GSC and its customers of the trademark AHHA does not infringe any purported rights of Umbra, LLC in the alleged AH trademark.

## AS AND FOR A FOURTH CAUSE OF ACTION

### DECLARATION OF NON-DILUTION OF UMBRA'S OH AND ALLEGED AH TRADEMARKS

65.     GSC repeats and realleges each of the allegations set forth in paragraphs 1 to 64 above as if set forth fully herein.

66.     Umbra, Inc. and Umbra, LLC have contended in the Home Depot, Inc. Action that GSC's use of the trademark AHHA dilutes Umbra, Inc. or Umbra, LLC's registered OH trademark and alleged AH trademark.  Home Depot, Inc. Complaint and Amended Complaint at ¶¶ 42-50; 58-68.

67.     An actual, present and justiciable controversy has arisen between GSC and Umbra, Inc. and Umbra, LLC concerning whether or not GSC's use of the trademark "AHHA" dilutes Umbra, LLC's registered OH trademark and alleged AH trademark.

68.     GSC seeks a declaratory judgment from this Court that the use of the trademark "AHHA" on or in connection with chairs made and sold by GSC does not dilute Umbra, Inc. or Umbra, LLC's registered OH trademark and alleged AH trademark.

## AS AND FOR A FIFTH CAUSE OF ACTION

### DECLARATION OF NON-INFRINGEMENT OF UMBRA'S ALLEGED TRADE DRESS

69.     GSC repeats and realleges each of the allegations set forth in paragraphs 1 to 68 above as if set forth fully herein.

70.     Umbra, Inc. and Umbra, LLC have contended in the Home Depot, Inc. Action that GSC's AHHA chair infringes Umbra, Inc. or Umbra, LLC's alleged trade dress. Home Depot, Inc. Complaint and Amended Complaint at ¶¶ 85-90.

71.     An actual, present and justiciable controversy has arisen between GSC and Umbra, Inc. and Umbra, LLC concerning whether or not GSC's AHHA chair infringes any alleged trade dress in the OH chair.

72.     GSC seeks a declaratory judgment from this Court that Umbra, Inc. and Umbra, LLC have no protectable trade dress in the OH chair and that, in any event, GSC's AHHA chair does not infringe Umbra, Inc.'s or Umbra, LLC's alleged trade dress.

## AS AND FOR A SIXTH CAUSE OF ACTION

### UNFAIR COMPETITION

73.     GSC repeats and realleges each of the allegations set forth in paragraphs 1 to 72 above as if set forth fully herein.

74.     Umbra, LLC and Umbra, Inc. maliciously and wantonly disparaged GSC and its product when they alleged that GSC acted in an unethical and immoral manner in marketing and selling its AHHA chair and alleged to Home Depot Canada that GSC had engaged in patent and trademark infringement.

75.     As set forth above, upon information and belief, Umbra, Inc. and Umbra, LLC maliciously commenced the Home Depot, Inc. Action despite their knowledge that GSC had a patent and that during the prosecution of GSC's patent application, Mr. Farber had fully and timely disclosed, as part of the prior art for consideration by the Patent Examiner, the '795 Rashid Patent. Further, at no time have Umbra, Inc. or Umbra, LLC notified GSC that they believed that the AHHA chair infringed the '795 Rashid Patent or any of Umbra, Inc. and Umbra, LLC's trademarks or informed GSC of any intent to commence litigation against GSC instead of against GSC's customers and potential customers. Indeed, GSC learned of Umbra, Inc. and Umbra, LLC's litigation regarding these issues only from Home Depot, Inc. whom Umbra, Inc. and Umbra, LLC sued.

76.     Moreover, Umbra, Inc. and Umbra, LLC deliberately attempted to mislead Home Depot, Inc., and the Court by failing to disclose in the Home Depot, Inc. Complaint and Amended Complaint their knowledge of the GSC Patent or the disclosure of the '795 Rashid Patent in the prior art in the GSC Patent.

77.    Likewise, Umbra, LLC's May, 2006 letter to Home Depot Canada was malicious and misleading in that it failed to disclose that Umbra, Inc. and Umbra, LLC had abandoned any rights to the AH trademark and even claimed that they continued to market and sell a stacking chair using the AH mark and further in that they disparaged GSC by alleging that GSC had deliberately attempted to create confusion between GSC's AHHA chair and Umbra, Inc.'s and Umbra, LLC's OH chair.

78.    Upon information and belief, Umbra, Inc. and Umbra, LLC have made similar malicious and misleading statements, both in writing and orally, to other prospective customers of GSC in the United States.

79.    Upon information and belief, Umbra, Inc. and Umbra, LLC commenced the Home Depot, Inc. Action for the improper purpose of threatening and intimidating GSC's customers so as to cause Home Depot USA to cease to do business with GSC and to intimidate other retailers who were considering the purchase and sale of the AHHA chair in the United States.

80.    Upon information and belief, Umbra, Inc. and Umbra, LLC elected to commence the lawsuit against Home Depot, Inc. – despite their knowledge that the U.S. Patent and Trademark Office had made a determination that the designs in the GSC Patent and the '795 Rashid Patent were patentably distinct – and despite the fact that Umbra, Inc. and Umbra, LLC had abandoned any rights to the alleged AH trademark.

81.    Upon information and belief, the conduct of Umbra, Inc. and Umbra, LLC described above was willful, wanton and malicious and was executed with the intent to harm GSC and its business and with the result that it harmed not only GSC but also

GSC's customers and the consuming public who were denied the opportunity to purchase the less expensive AHHA chair.

82.     Upon information and belief, Umbra, LLC at all times was acting as the agent and/or alter ego of Umbra, Inc.

83.     Umbra, Inc.'s and Umbra, LLC's conduct constitutes unfair competition under New York common law.

84.     As a direct and proximate cause of Umbra, Inc.'s and Umbra, LLC's wrongful conduct described above, GSC suffered damages in an amount to be determined at trial, but in no event less than $250,000 and GSC is entitled to punitive damages in an amount to be determined at trial.

85.     Umbra, Inc.'s and Umbra, LLC's acts of unfair competition have damaged and will continue to damage GSC's business, and have caused irreparable harm for which there is no adequate remedy at law unless it is enjoined by this Court.

**AS AND FOR A SEVENTH CAUSE OF ACTION**

**INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONSHIPS**

86.     GSC repeats and realleges each of the allegations set forth in paragraphs 1 to 85 above as if set forth fully herein.

87.     Umbra, Inc. and Umbra, LLC used wrongful means to interfere with GSC's prospective business relationships, including among others, its ongoing and prospective business relationships with Home Depot USA and Home Depot, Inc.

88.     The wrongful means utilized by Umbra, Inc. and Umbra, LLC included maliciously, wantonly and in bad faith alleging in a letter to Home Depot Canada that GSC acted in an unethical and immoral manner in marketing and selling its AHHA chair

and alleging to, Home Depot Canada that GSC had engaged in patent and trademark infringement.

89.     The wrongful means also included the threats and commencement of the Home Depot, Inc. Action for the improper purpose of intimidating Home Depot USA and Home Depot, Inc., as well as other prospective customers, so that they would not sell GSC's AHHA chair.

90.     As set forth above, Umbra, Inc. and Umbra, LLC instituted the Home Depot, Inc. Action with full knowledge that GSC had been granted the GSC Patent for the design embodied in the AHHA chair, and that the U.S. Patent and Trademark Office had made a determination that the designs in the GSC Patent and the '795 Rashid Patent where patentably distinct.

91.     Similarly, Umbra, Inc. and Umbra, LLC instituted the Home Depot, Inc. Action with the full knowledge that they had abandoned any rights in the AH trademark and that the mark AHHA did not infringe the registered OH trademark.

92.     Umbra, Inc. and Umbra, LLC's conduct caused Home Depot USA to decline to reorder the AHHA chair and, upon information and belief, has resulted in other retailers in the United States declining to order the AHHA chair in order to avoid costly patent and trademark infringement litigation.

93.     Upon information and belief, the conduct of Umbra, Inc. and Umbra, LLC described above was willful, wanton and malicious and executed in bad faith with the intent to interfere with GSC's existing and prospective business relationships with Home Depot USA and Home Depot, Inc. as well as prospective relationships with other retailers in the United States.

94.   Upon information and belief, Umbra, LLC at all times was acting as the agent and/or alter ego of Umbra, Inc.

95.   Upon information and belief, the conduct of Umbra, Inc. and Umbra, LLC described above was willful, wanton and malicious and was executed with the intent to harm GSC and its business and with the result that it harmed not only GSC, but also GSC's customers and the consuming public who were denied the opportunity to purchase the less expensive AHHA chair.

96.   As a result of Umbra, LLC's and Umbra, Inc.'s conduct, GSC has suffered damages in an amount to be determined at trial, but in no event less than $250,000, and is entitled to punitive damages in an amount to be determined at trial.

**WHEREFORE,** GSC respectfully requests that this Court enter judgment in favor of GSC and against Umbra, LLC and Umbra, Inc. granting the following relief:

A)   On its First Cause of Action, a declaratory judgment that the use, sale, offer for sale, distribution, marketing, and importation of GSC's AHHA chair does not infringe the '795 Rashid Patent and a declaration that the case is exceptional within the meaning of 35 U.S.C. § 285;

B)   On its Second Cause of Action, a declaratory judgment that GSC's use of the mark AHHA does not infringe U.S. Trademark Registration 2,558,858 for the OH trademark;

C)   On its Third Cause of Action, a declaratory judgment that Umbra, Inc. and Umbra, LLC have abandoned any rights either of them may have had to the common law AH trademark and that GSC's use of the mark AHHA

does not infringe any common law rights Umbra, Inc. and Umbra, LLC may have in the alleged AH trademark;

D) On its Fourth Cause of Action, a declaratory judgment that GSC's use of the mark AHHA does not dilute U.S. Trademark Registration 2,558,858 for the OH trademark and alleged AH trademark;

E) On its Fifth Cause of Action, a declaratory judgment that Umbra, Inc. and Umbra, LLC have no protectable trade dress in the OH chair, and that the use, sale, offer for sale, distribution, marketing, and importation of GSC's AHHA chair does not infringe Umbra, Inc.'s and Umbra, LLC's alleged trade dress;

F) On its Sixth Cause of Action, a judgment in an amount to be determined at trial against all Defendants, for Umbra, Inc.'s and Umbra, LLC's unfair competition in disparaging GSC and its products and an award of punitive damages in an amount to be determined at trial;

G) On its Seventh Cause of Action, a judgment in an amount to be determined at trial against all Defendants, for Umbra, Inc.'s and Umbra, LLC's intentional interference with GSC's prospective business relationships and an award of punitive damages in an amount to be determined at trial;

H) For willful and wanton conduct, an order requiring Umbra, Inc. and Umbra, LLC to pay GSC an amount equal to GSC's attorneys' fees and costs incurred in this action pursuant to 35 U.S.C. § 285; and

I)   A preliminary and permanent injunction prohibiting Umbra, LLC and Umbra, Inc. from falsely alleging that GSC's AHHA chair infringes the '795 Rashid Patent, infringes or dilutes Umbra, Inc.'s and Umbra, LLC's trademarks, or infringes Umbra, Inc.'s or Umbra, LLC's alleged trade dress.

J)   Such other and further relief as the Court may deem just and proper.

**Jury Demand: GSC demands trial by jury of all issues so triable.**

DATED:          December 12, 2006
                Buffalo, New York

Respectfully submitted,

**SCHRÖDER, JOSEPH & ASSOCIATES, LLP**

Linda H. Joseph, Esq.
766 Ellicott Street
Buffalo, New York 14203
(716) 881-4900 Telephone
(716) 881-4909 Telefax
ljoseph@sjalegal.com

**COOK, ALEX, McFARRON, MANZO,
CUMMINGS & MEHLER, LTD.**

Edward D. Manzo, Esq.
Joseph R. Freund, Esq.
200 West Adams Street, Suite 2850
Chicago, Illinois 60606
(312) 236-8500 Telephone
(312) 236-8176 Telefax

*Attorneys for Plaintiff
GSC Technology Corporation*